In re Dudley D. ALLEN, Debtor.

Hanley C. CLARK, Commissioner of Insurance for the State of West Virginia, in his official capacity as Receiver of George Washington Life Insurance Company, Plaintiff,

v.

Dudley D. ALLEN, Defendant.

Bankruptcy No. 96–0565–BKC–3P7.
Adv. No. 96–276.

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

Feb. 10, 1997.

Raymond R. Magley, Jacksonville, FL, for Plaintiff.

Richard R. Thames, Jacksonville, FL, for Defendant.

### FINDINGS OF FACT AND CONCLU-SIONS OF LAW ON PLAINTIFF'S AND DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT ON COUNT II OF THE COMPLAINT

GEORGE L. PROCTOR, Bankruptcy Judge.

This proceeding came before the Court upon Plaintiff's and Defendant's Motions for Summary Judgment on Count II of the complaint pursuant to 11 U.S.C. § 523(a)(4). A hearing was held on November 13, 1996. Upon the pleading, affidavits and memoranda of law submitted by the parties, the Court enters the following Findings of Fact and Conclusions of Law:

### FINDINGS OF FACT

1. Defendant was a member of the Board of Directors of George Washington Life Insurance Company (GW), from 1982 to 1991. (Adv.Rec. 17). Defendant performed attorney services for GW on its individual health and life insurance claims. (*Id.*).

2. On June 3, 1991, the Circuit Court of Kanawha County of West Virginia entered an Order appointing the Insurance Commissioner of the State of West Virginia, Hanley C. Clark (Plaintiff), Receiver and Liquidator of GW. (Adv.Rec 17, Ex. 1).

3. On September 3, 1992, Plaintiff sued Defendant and other former directors of GW. (Adv.Rec. 17). On July 29, 1993, Plaintiff filed an amended complaint, alleging, *inter alia*, that Defendant breached his fiduciary duties to GW (Count III), and committed professional negligence (Count IV). (Adv. Rec. 17, Ex. 2). A two-week trial was held in March and April 1995. (Adv.Rec. 17). The Verdict Form framed the issues under Counts III and IV in the following format for the jury to decide:

Count III: Do you find by a preponderance of the evidence that any of the Defendants breached their fiduciary duty to George Washington Life Insurance Company ("GW Life") by failing to exercise utmost good faith and loyalty in their dealings with GW Life?

Count IV: Do you find by a preponderance of the evidence that any of the Defendants deviated from the appropriate standard of care or were negligent in the performance of their professional services as attorneys for GW Life?

(Adv.Rec. 25, Ex. A).

4. On Count III, the West Virginia District Court instructed the jurors as follows: "If you find that the defendants, as officers and directors, did not act in good faith and loyalty in their dealings with G.W. Life, then you may find that they breached their fiduciary duty." (Adv.Rec. 17, Ex. 3, at 1984). The jurors were also told that: "The director's duty of good faith forbids placing himself in the position where his individual interest clashes with his duty to the corporation." (*Id.*).

5. On Count IV, the jurors were instructed to find that Defendant committed professional malpractice or negligence if: (i) Defendant did not perform services as an attorney for GW at the level required by the standard of care; (ii) Defendant violated any ethical rules that define the minimum level of professional conduct required by attorneys to their clients; or (iii) Defendant's law partner was negligent in his performance of his duties to the corporation. (*Id.* at 1989–91).

6. The jury found Defendant liable on Counts III and IV and apportioned his fault at ten (10) percent. (Adv.Rec. 25, Ex. A). On April 10, 1995, the jury entered a verdict and awarded $4,629,188 in damages on Count III, and $8,986,070 in damages on Count IV, totalling $13,615,258. (*Id.*). On July 7, 1995, the West Virginia District Court reduced the total award of damages to $6,198,591.34, and entered a Final Judgment Order accordingly. (Adv.Rec. 17, Ex. 6). Although Defendant was found ten percent at fault on both the breach of fiduciary duty and professional negligence counts, he was held jointly and severally liable for the full amount of the judgment. (*Id.* at 6).

7. On September 26, 1995, the West Virginia District Court's judgment was registered in the United States District Court of the Middle District of Florida. (Main Case Doc. 38).

8. On February 1, 1996, Defendant filed his petition for relief under Chapter 7 of the Bankruptcy Code. (Main Case Doc. 1). On May 7, 1996, Plaintiff filed this proceeding objecting to Defendant's discharge and to determine dischargeability of debt pursuant to 11 U.S.C. §§ 523(a)(4) and 727(a)(2)(A). (Adv.Rec. 1). On October 3, 1996, the Court allowed Plaintiff to amend his complaint, adding Counts III and IV pursuant to 11 U.S.C. §§ 727(a)(2)(B) and (a)(4) respectively. (Adv.Rec. 21).

9. Count II of the complaint alleges that the debt owed by Defendant pursuant to the West Virginia District Court Final Judgment in the amount of $6,189,591.34 is nondischargeable pursuant to 11 U.S.C. § 523(a)(4). (Adv.Rec. 12). On September 26, 1996, Plaintiff moved for summary judgment on Count II of the complaint. (Adv.Rec. 15). A hearing was held on November 13, 1996, and the Court gave Defendant an opportunity to file his Motion for Summary Judgment within seven days. (Adv.Rec. 20). Defendant served Plaintiff with his Summary Judgment Motion on December 13, 1996, but a copy was not filed with the Clerk's Office until January 23, 1997. (Adv.Rec. 32, at 17). Plaintiff made no objections to the timeliness of Defendant's Motion for Summary Judgment.

### CONCLUSIONS OF LAW

The issue before the Court is whether either party is entitled to summary judgment pursuant to 11 U.S.C. § 523(a)(4). A motion for summary judgment is granted if "the pleading, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56; Fed.R.Bankr.P. 7056. The moving party has the burden of demonstrating that there is no genuine issue

of material fact. *Macks v. United States of America (In re Macks)*, 167 B.R. 254, 256 (Bankr.M.D.Fla.1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986)). After the moving party has met its burden, the party opposing a motion for summary judgment must make a sufficient showing establishing the existence of an essential element of that party's case on which the party bears the burden of proof at trial. *Id.*

In this proceeding, both Plaintiff and Defendant moved for summary judgment. Plaintiff contends that the Court should enter summary judgment in his favor pursuant to 11 U.S.C. § 523(a)(4), based on the doctrine of collateral estoppel. (Adv.Rec. 16). Defendant seeks summary judgment on the following bases: (i) There is no "fiduciary relationship" under 11 U.S.C. § 523(a)(4) because an express trust and a trust *res* are required, and there is no express trust or trust *res* involved in Defendant's relationship with GW; (ii) Defendant cannot be held liable for acts or occurrences which occurred prior to his acting in a fiduciary capacity for purposes of satisfying the requirements of 11 U.S.C. § 523(a)(4); and (iii) Defendant's mere negligence in the performance of his professional responsibilities as an attorney, absent a trust *res* and defalcation relating to the *res*, will not support an exception to discharge under 11 U.S.C. § 523(a)(4). The Court will address each party's Motion for Summary Judgment accordingly.

## A. PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

 The Court is initially presented with the issue of whether to grant Plaintiff's Motion for Summary Judgment pursuant to 11 U.S.C. § 523(a)(4) on the basis of collateral estoppel. The doctrine of collateral estoppel applies to dischargeability proceedings, and "bars relitigation of an issue previously decided in judicial or administrative proceedings if the party against whom the prior

decision is asserted has a 'full and fair opportunity' to litigate the issue in an earlier case." *See St. Laurent, II v. Ambrose (In re St. Laurent, II)*, 991 F.2d 672, 676 (11th Cir. 1993) (citations omitted). The Eleventh Circuit Court of Appeals sets out the following four elements that must be satisfied before collateral estoppel applies:

1. The issue at stake must be identical to the one involved in the prior litigation;

2. The issue must have been actually litigated in prior litigation;

3. The determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in that earlier action; and

4. The burden of persuasion in the discharge proceeding must not be significantly heavier than the burden of persuasion in the initial action.

*Id.*[1] The Court will address each element accordingly.

## 1. The issue at stake must be identical to the one involved in the prior litigation.

 Critical to this Court's determination of whether to grant Plaintiff's motion is whether the issue at stake in this proceeding is identical to the issues in the West Virginia District Court action. To determine whether the issues are identical, the Court examines whether the requirements of proving the issue at stake in this proceeding "closely mirror" the requirements of proving the issues presented to the jury in the prior action. *See, e.g., St. Laurent*, 991 F.2d at 676; *Cardinal Serv. Corp. of Richmond v. Jolly (In re Jolly)*, 124 B.R. 365, 367 (Bankr.M.D.Fla. 1991). In so doing, the Court examines the instructions and questions that were presented to the jury, and case law outlining the requirements of proving each issue. *Id.*

 In this proceeding, the issue at stake is whether Defendant committed "defalcation

---

1. The Court notes that although the Court of Appeals dealt with a state court judgment in *St. Laurent* and in this proceeding involves a United States District Court judgment, the same principles and elements of collateral estoppel apply. *See Allen v. McCurry*, 449 U.S. 90, 96, 101 S.Ct.

411, 415, 66 L.Ed.2d 308 (1980) (stating generally that federal courts generally use collateral estoppel to give preclusive affect of decisions made by other federal courts, and the same principles apply).

while acting in a fiduciary capacity" pursuant to 11 U.S.C. § 523(a)(4).[2] In a proceeding under Section 523(a)(4), the plaintiff must prove that: (1) the defendant was acting in a fiduciary capacity; and (2) while acting in a fiduciary capacity, the defendant committed defalcation. *NesSmith Elec. Co. v. Kelley (In re Kelley)*, 84 B.R. 225, 228 (Bankr. M.D.Fla.1988).

In the prior action, the jurors were asked to answer the following questions:

> Count III: Do you find by a preponderance of the evidence that any of the Defendants breached their fiduciary duty to George Washington Life Insurance Company ("GW Life") by failing to exercise utmost good faith and loyalty in their dealings with GW Life?

> Count IV: Do you find by a preponderance of the evidence that any of the Defendants deviated from the appropriate standard of care or were negligent in the performance of their professional services as attorneys for GW Life?

(Adv.Rec. 25, Ex. A, at 4–6).

On Count III, the West Virginia District Court instructed the jurors as follows: "If you find that the defendants, as officers and directors, did not act in good faith and loyalty in their dealings with G.W. Life, then you may find that they breached their fiduciary duty." (Adv.Rec. 17, Ex. 3, at 1984). The jurors were also told that: "The director's duty of good faith forbids placing himself in the position where his individual interest clashes with his duty to the corporation." (*Id.*).

On Count IV, the jurors were instructed to find that Defendant committed professional malpractice or negligence if: (i) Defendant did not perform services as an attorney for GW at the level required by the standard of care; (ii) Defendant violated any ethical rules that define the minimum level of professional

conduct required by attorneys to their clients; or (iii) Defendant's law partner was negligent in his performance of his duties to the corporation. (*Id.* at 1989–91).

To determine whether the issue in this proceeding is identical to the issues in the West Virginia action, as outlined above, the Court now examines whether the requirements of proving Section 523(a)(4) "closely mirror" the requirements of proving the issues that were presented to the Jury in the West Virginia action.

### a. Fiduciary Capacity

This Court has previously held that a fiduciary relationship arises at law and in equity when one person places a special confidence in another, thereby binding that person to make a good faith effort to act in the best interest of the other. *Page v. Racila (In re Racila)*, 138 B.R. 303, 306 (Bankr. M.D.Fla.1992) (citations omitted). Federal law determines what constitutes a fiduciary under Section 523. *Id.* Federal courts have found that "the traditional meaning of the term 'fiduciary'—a relationship involving confidence, trust and good faith—to be far too broad for bankruptcy purposes." *Liberty Nat'l Bank v. Wing (In re Wing)*, 96 B.R. 369, 374 (Bankr.M.D.Fla.1989) (citing *Chapman v. Forsyth*, 43 U.S. (2 How.) 202, 11 L.Ed. 236 (1844); *Upshur v. Briscoe*, 138 U.S. 365, 11 S.Ct. 313, 34 L.Ed. 931 (1891)). Consequently, the bankruptcy concept has been narrowed, and a plaintiff must prove the existence of an "express or a technical trust." *Id.* This Court has held that "an express or technical trust exists when there is a segregated trust *res*, an identifiable beneficiary, and affirmative trust duties established by contract or by statute." *American Surety & Casualty Co. v. Hutchinson (In re Hutchinson)*, 193 B.R. 61, 65 (Bankr. M.D.Fla.1996).[3]

---

**2.** Section 523(a)(4) states, in relevant part, that: "(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny[.]" 11 U.S.C. § 523(a)(4).

**3.** Plaintiff argues that state law applies to determine whether a "technical trust" exists. (Adv.

Rec. 16, at 6) (citing *Quaif v. Johnson*, 4 F.3d 950 (11th Cir.1993); *Jolly*, 124 B.R. at 366). In *Quaif*, the Court of Appeals recognized that the Georgia Code created a "technical trust" for purposes of satisfying the "fiduciary" requirement of section 523(a)(4). *Quaif v. Johnson*, 4 F.3d at 953. In *Jolly*, this Court cited to the Virginia law that discussed the type of relationship that exists between the partners, and found

### (i). Count III of the West Virginia District Court Action

Plaintiff brings to the Court's attention West Virginia law providing that: "Directors are not technically trustees, but are agents who bear a relation of trust and confidence to their principal[, standing] in fiduciary relation to the corporation and are held to the utmost good faith in their dealings with it." *Young et al. v. Columbia Oil Co.*, 110 W.Va. 364, 158 S.E. 678, 681 (1931) (citations omitted); *see* (Adv.Rec. 16, at 8). Plaintiff then argues that:

> The phrase in *Young* that '[d]irectors are not technically trustees' does not mean that the relationship between a director and corporation is not a technical trust. The logical meaning of this [quote] is that, while a director is not a trustee by virtue of a formal trust agreement, his 'fiduciary relation' of 'trust and confidence' to the corporation and obligation to deal with corporation in 'utmost good faith' creates a technical trust.

(Adv.Rec. 16, at 8–9). Utilizing this analytical framework, Plaintiff argued further that:

> [T]he issue of whether [Defendant] was fiduciary in the West Virginia Action (where West Virginia law was applied) is identical to the issue of whether he was acting in a 'fiduciary capacity' under § 523(a)(4) because the (i) the term 'fiduciary' under § 523(a)(4) includes technical trusts and (ii) the relationship of a director to the corporation under West Virginia law constitutes a technical trust.

(*Id.* at 10).

▆▆ The Court disagrees with Plaintiff's contentions. The issues are not identical because the term "fiduciary" under West Virginia law follows the traditionally broad meaning of "fiduciary" warned against in *Wing*, while "fiduciary" for purposes of satisfying Section 523(a)(4) has been narrowed. *See Wing*, 96 B.R. at 374. The Court declines to read *Young* as broadly as Plaintiff does, and concludes that "an express or technical trust" by their own terms cannot be implied, but must be created by contract or statute. The elements of a creating a "fiduciary" under Section 523(a)(4) do not "closely mirror" the requirements Plaintiff outlined in *Young* to satisfy Count III of the West Virginia District Court action. Therefore, summary judgment is inappropriate on the basis of collateral estoppel because a triable issue of fact exists regarding whether Defendant committed defalcation while acting in a fiduciary capacity.

### ii. Count IV of the West Virginia District Court Action

Plaintiff argues that "the jury's finding that an attorney-client relationship exists between Defendant and GW Life under Florida Law satisfies the fiduciary requirement under § 523(a)(4)." (Adv.Rec. 16, at 17). Plaintiff also points out that "a fiduciary relationship between attorney and client also exists [under] West Virginia law." (*Id.*). The West Virginia District Court instructed the jury that " 'attorney-client relationship' means a professional relationship in which one party, the attorney, agrees to performs professional services for another or business, that is the client." (Adv.Rec. 17, Ex. 3 at 1988). The District Court further instructed the jury that, "the attorney owes his loyalty and his duty to perform his services with the ordinary standard of care of the corporation itself[.]" *Id.*

▆▆ The Court does not dispute Plaintiff's contentions that an attorney-client relationship may have existed between Defendant and GW, however, for purposes of satisfying the "fiduciary" requirement of

---

that such relationship was within the contemplations of section 523(a)(4) because a partners was placed within the position of a trustee as to the other partners. *Jolly,* 124 B.R. at 367. *Quaif* and *Jolly* can be reconciled with the Court's holding in *Hutchinson* that an express or a technical trust must include affirmative trust duties established by contract or by statute. *Hutchinson,* 193 B.R. at 65.

However, in this proceeding, the West Virginia jury was not faced with the issue of whether a technical trust existed between Defendant and GW, but rather the jurors were instructed to determine whether Defendant "exercised the utmost good faith and loyalty to the corporation." (Adv.Rec. 17, Ex. 3, at 1983–84). This is the very kind of expansive reading of the term "fiduciary" warned against in *Wing. See, Wing,* 96 B.R. at 374.

Section 523(a)(4), there must be an express or technical trust. *Wing,* 96 B.R. at 374. The general legal principles of "loyalty" and deviation from a "standard of care," as relied on by the West Virginia jurors, do not "closely mirror" the elements needed to satisfy "acting within fiduciary capacity" under Section 523(a)(4). Therefore, the issue at stake in proceeding is not identical the issue of professional negligence, under Count IV, in the West Virginia District Court action.

### b. Defalcation

▮ This Court has defined "defalcation" as a failure to account for money or property that has been entrusted to another. *Hall v. Johann (In re Johann),* 125 B.R. 679, 681 (Bankr.M.D.Fla.1991) (citing *Kelley,* 84 B.R. at 230). The term is broader than embezzlement or misappropriation and is governed by an objective standard, vitiating the need for a showing of bad faith or intent. *Id.*

As to Count III of the West Virginia District Court action, Plaintiff argues that "[a] breach of fiduciary duty is sufficient to constitute a defalcation under § 523(a)(4)[, and b]ecause defalcation under § 523(a)(4) includes breach of fiduciary duty, the issue of whether [Defendant] breached his fiduciary duty in the West Virginia Action is identical to the issue of whether he committed a defalcation under § 523(a)(4)." (Adv.Rec. 16, at 12).[4] As to Count IV of the West Virginia District Court action, Plaintiff also argues that, "the issue of whether [Defendant] committed professional negligence in the West Virginia Action is identical to the issue of whether he committed a defalcation under § 523(a)(4)." *Id.*

Having determined that requirements to establish a fiduciary relationship under Section 523(a)(4) do not "closely mirror" the requirements of fiduciary under Counts III and IV of the West Virginia District Court, the Court need not resolve whether issues are identical as to defalcation. The Court

now turns to the other prongs of collateral estoppel.

### 2. The issue must have been actually litigated in prior litigation.

This prong of collateral estoppel is not a disputed issue because a jury trial was conducted and all parties in this litigation were present and participated in the West Virginia District Court action.

### 3. The determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in that earlier action.

This prong of collateral estoppel is not in dispute because the determination of the issues in the prior action was a critical and necessary part of the judgment in that action.

### 4. The standard of proof in the earlier litigation must be at least as stringent as that employed in the latter litigation.

This final prong of collateral estoppel is not in dispute because the standard of proof in the West Virginia action and this proceeding is "preponderance of the evidence."

▮ In sum, having found that the issue presented in this proceeding is not identical to issues presented in the West Virginia action, the Court concludes that Plaintiff's Motion for Summary Judgment should be denied because there are trial issues of fact and law on whether Defendant committed defalcation while acting in a fiduciary capacity pursuant to Section 523(a)(4).

### B. DEFENDANT'S MOTION FOR SUMMARY JUDGMENT.

▮ Next, the Court turns to Defendant's Motion for Summary Judgment. In addition to rebutting Plaintiff's arguments for summary judgment, Defendant offered the following reasons for the Court to enter summary judgment in his favor:

i. The relationship between a director of a corporation and the corporation

---

4. Plaintiff cited to *Wright v. Menendez (In re Menendez),* 107 B.R. 789, 792 (Bankr.S.D.Fla. 1989). In *Menendez,* the court concluded that a "fiduciary" relationship was in existence, based

upon its findings that a technical trust was created pursuant to Florida Statutes. *Id.* at 791. This is not the case here.

itself is not the type of "fiduciary relationship" contemplated by § 523(a)(4)—An express trust *and* a trust *res* are required under the statute. Because there was no express trust or trust *res* involved in Mr. Allen's relationship with GW Life, that portion of the West Virginia judgment attributable to his breach of fiduciary duty to the corporation is dischargeable;

ii. Under 11 U.S.C. § 523(a)(4), a debtor cannot be held liable for dischargeability purposes for acts or occurrences which occurred prior to his acting in a fiduciary capacity. The West Virginia judgment includes damages which arose prior to Mr. Allen becoming a director of GW Life. All damages are dischargeable; and

iii. Absent the existence of a trust *res* and a defalcation related thereto, an attorney's mere negligence in the performance of his professional responsibilities will not support an exception to discharge under 11 U.S.C. § 523(a)(4). Because no funds were entrusted to Mr. Allen as attorney for GW Life, the debt attributable the defendant's 'failure to exercise due care' in the performance of his professional duties as attorney for GW Life is dischargeable.

(Adv.Rec. 32, at 2–3). Because Plaintiff, in his pleading, raised factual and legal objections to Defendant's arguments outlined above, it becomes obvious that summary judgment is not appropriate. (Adv.Rec. 16, at 21–29). Thus, the Court concludes that there are triable issues of fact to be addressed at trial, and Defendant's Motion for Summary Judgment should be denied.

## CONCLUSION

Plaintiff's Motion for Summary Judgment pursuant to 11 U.S.C. § 523(a)(4) on the basis of collateral estoppel should be denied because the issue at stake in this proceeding is not identical to the issues presented in the West Virginia District Court action. Defendant's Motion for Summary Judgment should also be denied because his reasons for seeking summary judgment creates triable issues of fact. The Court will enter an Order consistent with these Findings of Fact and Conclusions of Law.