210 B.R. 188 (1997)
In the Matter of Renis ELDRIDGE, SSN: XXX-XX-XXXX, Debtor.
UNITED FOOD AND COMMERCIAL WORKER'S UNION LOCAL 1995 and Employer's Health and Welfare Fund, Plaintiffs,
v.
Renis ELDRIDGE, Defendant.
Bankruptcy No. 96-83336-JAC-7, Adversary No. 96-80364.
United States Bankruptcy Court, N.D. Alabama, Northern Division.
June 26, 1997.
*189 Scott Sargent, Sirote & Permutt, P.C., Huntsville, AL, for Plaintiff.
Kevin Heard, Huntsville, AL, for Defendant.
Tazewell Shepard, Huntsville, AL, Chapter 7 Trustee.

MEMORANDUM OPINION
JACK CADDELL, Bankruptcy Judge.
This cause came on to be heard on cross motions for summary judgment on the complaint of the United Food and Commercial Worker's Union Local 1557 and Employer's Health and Welfare Fund (the "plan") seeking to have the debt in issue declared nondischargeable pursuant to 11 U.S.C. § 523(a)(4) on the ground that Renis Eldridge ("Eldridge") committed an act of defalcation while acting in a fiduciary capacity by failing to reimburse the plan from proceeds received in settlement of an automobile accident for medical expenses paid by the plan on behalf of Eldridge pursuant to the terms of the rules and regulations governing the plan and a subrogation agreement executed by Eldridge. At the pretrial conference, the Court dismissed count two of the complaint under which the plan sought a determination of non-dischargeability pursuant to 11 U.S.C. § 523(a)(6). This is a core proceeding under 28 U.S.C. § 157(a), *190 (b)(2)(I) over which this Court has jurisdiction pursuant to 28 U.S.C. §§ 1334, 157(b)(1).
Pursuant to Federal Rule of Civil Procedure 56(c) and Federal Rule of Bankruptcy Procedure 7056, summary judgment is appropriate where there is no genuine issue of material fact and the court determines that the moving party is entitled to judgment as a matter of law while viewing the evidence in a light most favorable to the non-moving party. Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The party moving for summary judgment bears the burden of establishing the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323, 106 S.Ct. at 2552. Once the movant makes a prima facie showing of entitlement to summary judgment as a matter of law, the non-movant must demonstrate that there is a genuine issue of material fact for trial. Id. at 324, 106 S.Ct. at 2553. Where both parties seek summary judgment, the Court must consider each motion independently and apply the applicable standards to each motion to determine whether summary judgment is appropriate under either motion. In re Envirodyne Indus., Inc., 176 B.R. 825 (Bankr.N.D.Ill.1995).
Upon due consideration of the pleadings, arguments of counsel, and relevant law, the Court finds that there is no genuine issue of material fact in the present case and that Eldridge is entitled to judgment as a matter of law because neither the subrogation agreement nor the rules and regulations governing the plan created a fiduciary relationship between Eldridge and the plan within the meaning of § 523(a)(4).[1]
I. Findings of Fact
On April 23, 1992, Eldridge, an employee of the Kroger Company, was involved in an automobile accident in which he sustained severe injuries. As an employee of the Kroger Company and member of the union, Eldridge is a participant in a group employee health benefit plan. The health plan is a self-funded employee welfare benefit plan known as the United Food and Commercial Worker's Union Local 1557 and Employer's Health and Welfare Fund. The plan's program of benefits is set forth in a document described as the Rules and Regulations of the plan. Before paying Eldridge's medical expenses, the plan required the debtor to execute a subrogation agreement pursuant to section 7.4(b) of the rules and regulations governing the plan which states:
(b) Action Required of Person. The Person (plan participant) will be required to complete a subrogation repayment agreement, in a form acceptable to the Trustees, prior to payment of any benefits by the Plan. If requested in writing by the Trustees, the Person shall take, through any representative designated by the Trustees, such action as may be necessary or appropriate to recover payments made by the Plan from any individual, organization or other entity and shall hold any money recovered from such individual, organization or other entity in trust for the benefit of the Plan to be paid to the Plan immediately upon recovery thereof. (emphasis added).
Substantial correspondence occurred between counsel for Eldridge and counsel for the plan concerning Eldridge's obligation to execute the plan's standard subrogation agreement. Counsel for Eldridge argued that the subrogation agreement should be modified in conformity with the decision of the Alabama Supreme Court in Powell v. Blue Cross and Blue Shield, 581 So.2d 772 (Ala.1990), in which the court determined that an insurer is not entitled to subrogation until the insured has been fully compensated for his loss. On June 29, 1992, Eldridge signed the plan's standard subrogation agreement which states:
(1) To the extent that the United Food and Commercial Workers Union Local 157 and Employers Health and Welfare Plan and Trust (the "Plan") insurance office shall have paid any money to or on behalf of the employee or eligible dependent, pursuant to the provisions of the Plan of Benefits provided by the Plan, because of loss or *191 damage for which the Employee may have a cause of action against a third party who caused this loss or damage, the Plan (insurance office) shall be subrogated (reimbursed) to the extent of such payment to any and all recovery by the employee as a condition of the payment of such money by the Plan.
Counsel for Eldridge submitted the executed subrogation agreement to the plan with a letter in which he stated that he would pursue the debtor's cause of action against the other driver involved in the April 1992 automobile accident only if the plan would agree to divide any recovery equally between Eldridge, counsel for the debtor, and the plan. Upon receiving no response to this letter, counsel for Eldridge mailed a second letter advising he would assume that the plan did not wish to pursue its subrogation claim and would not make a claim against any proceeds recovered at trial if the plan failed to respond within ten (10) days. Although the plan did not respond to these letters, it paid $38,139.47 in medical expenses on behalf of the debtor after receiving the executed subrogation agreement.
On August 27, 1992, Eldridge filed a personal injury suit in the Circuit Court of Madison County against the other driver involved in the automobile accident and subsequently settled the action for $50,000.00. The state court held a damages hearing in conformity with the Powell case and determined that Eldridge's damages exceeded the amount of the settlement. Upon advice of counsel, Eldridge refused to reimburse the plan from the settlement proceeds as required by the subrogation agreement and plan documents.
On December 20, 1993, Eldridge's daughter, Brandy Eldridge, was also involved in an automobile accident in which she sustained injuries. The plan refused to pay the medical expenses incurred by Eldridge on behalf of his daughter in the approximate amount of $13,000.00 because Eldridge refused to execute a second subrogation agreement.
On May 26, 1994, Eldridge filed a complaint in the Circuit Court of Madison County alleging breach of contract and bad faith against the plan for failure to pay his daughter's medical expenses. The plan removed the case to the United States District Court for the Northern District of Alabama based upon the federal question jurisdiction of the application of ERISA and filed a counterclaim against Eldridge to recover the medical expenses it paid on the debtor's behalf as a result of his injuries.
On summary judgment, the district court initially determined that the plan was entitled to reimbursement for all medical expenses paid on behalf of Eldridge pursuant to the terms of the subrogation agreement executed in conjunction with the debtor's accident and the plan documents. The court ruled that the Powell decision did not apply because the plan was covered by ERISA. The court entered judgment in favor of the plan in the amount of $ 38,139.47. The district court did not make a finding regarding the fiduciary responsibility, if any, of Eldridge to the plan as that question was not in issue.
On a separate motion for summary judgment, the court determined that the plan's refusal to pay that portion of the $13,000.00 in medical expenses related to Brandy Eldridge's accident was proper because Eldridge failed to execute the subrogation agreement as required by section 7.4(b) of the plan's rules and regulations. The court further found that the plan was liable to Eldridge in the amount of $6,366.38 for medical expenses incurred on behalf of his daughter that were unrelated to the automobile accident. The plan was entitled, however, to set-off this amount against the $38,139.47 owed by Eldridge, thus, the court entered a judgment against Eldridge in the total amount of $31,773.09.
II. Conclusions of Law
Based upon the foregoing, the plan seeks to except its judgment from discharge under § 523(a)(4) of the Bankruptcy Code on the ground that Eldridge, while acting in a fiduciary capacity for the plan, appropriated and converted funds that were to be held in trust by debtor for the benefit of the plan. In support of its motion for summary judgment, the plan argued that the subrogation agreement constituted an express or technical *192 trust. The plan further argued that the plan documents support the existence of a trust. In support of his motion for summary judgment, Eldridge argued that there was no fiduciary relationship for purposes of § 523(a)(4) because neither the subrogation agreement nor the rules and regulations governing the plan created a technical or express trust as that term is defined under the Bankruptcy Code.
Section 523(a)(4) of the Bankruptcy Code excludes from discharge any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." To sustain a cause of action under this section for defalcation, the plan must establish that (1) Eldridge was acting in a fiduciary capacity; and (2) Eldridge committed an act of defalcation while acting in such capacity. Clark v. Allen (In re Allen), 206 B.R. 602, 605 (Bankr.M.D.Fla.1997). The fresh start policy of bankruptcy requires that exceptions to discharge be generally construed narrowly against a creditor and liberally in favor of the debtor. In re Hunter, 780 F.2d 1577 (11th Cir.1986). Thus, the plan has the burden of proving that its judgment falls within the exception to discharge provided by § 523(a)(4). This burden is satisfied by a preponderance of the evidence. Grogan v. Garner, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).
The question of whether Eldridge was acting in a fiduciary capacity is controlled by federal law. Davis v. Aetna Acceptance Co., 293 U.S. 328, 55 S.Ct. 151, 79 L.Ed. 393 (1934); In re Allen, 206 B.R. at 606; Hartford Accident & Indem. Co. v. McCraney (In re McCraney), 63 B.R. 64, 65 (Bankr.N.D.Ala.1986). The traditional definition of "fiduciary" contemplates a special relationship of confidence, trust and good faith. Freeman v. Frick (In re Frick), 207 B.R. 731, 734 (Bankr.N.D.Fla.1997) (J. Mahoney). Federal courts have found this definition "to be far too broad" for purposes of § 523(a)(4) and have limited the scope of the term fiduciary to include express and technical trusts. Quaif v. Johnson, 4 F.3d 950, 952 (11th Cir.1993) (noting that the Supreme Court has consistently held that the term `fiduciary' is not to be construed expansively, but instead is intended to refer to technical or express trusts); In re Frick, 207 B.R. at 734; In re Allen, 206 B.R. at 606.
In the Frick case, Chief Judge Mahoney explained who is potentially liable under § 523(a)(4) as follows:
The narrow interpretation of fiduciary with the broad interpretation of defalcation ensures that the window of liability opens infrequently. Only trustees with entrusted funds in clearly defined trusts are covered.
* * * * * *
[C]ourts have consistently held that to be a fiduciary for purposes of dischargeability, the debtor must be a trustee under either an express or technical trust rather than a trust imposed ex-maleficio. The distinction, then, between an express trust and a trust imposed ex-maleficio is that an express trust comes into existence prior to the act of wrongdoing from which the debt arose. A trust imposed ex-maleficio, on the other hand, springs into existence from the very act of wrongdoing and is applied constructively as a remedy for wrongdoing to prevent unjust enrichment.

Id. (citations omitted).
A technical or express trust requires (1) a declaration of affirmative trust duties, (2) a segregated trust res, and (3) an intent to create a trust relationship. Council 49, Am. Fed'n of State, County and Mun. Employees v. Boshell (In re Boshell), 108 B.R. 780, 783 (Bankr.N.D.Ala.1989). The trust relationship must have existed prior to the act which created the debt. In re Quaif, 4 F.3d at 952.
In the present case, Eldridge cites the case of Continental Cas. Co. v. York, 205 B.R. 759 (E.D.N.C.1997), in support of his argument that there is insufficient evidence to prove the existence of an express or technical trust. In the York case, the district court determined that York's obligation to reimburse Continental from Social Security disability benefits was not a "fiduciary" obligation sufficient to except the resulting indebtedness from discharge on a fiduciary fraud theory under § 523(a)(4).
*193 Pursuant to the terms of her disability plan, York was entitled to receive 60% of her salary less the amount of any disability benefits paid under the Social Security Act. After York became disabled, Continental offered the debtor the choice between two benefit payment options. Under the first option, York would receive the entire 60% of her salary without any reduction for Social Security benefits that she would receive retroactively. Upon receipt of her Social Security benefits, York was to set aside the funds until notified by Continental of the amount of the overpayment after which she was to reimburse the insurer within three weeks. Under the second option, York would receive 60% of her salary less the amount of Social Security benefits to which she was entitled. York chose the first option and agreed to the reimbursement arrangement.
Continental argued that York owed it a fiduciary duty because she had agreed to the reimburse arrangement. Without setting forth the documents relied upon by Continental, the district court determined that no documents of record before the court were sufficient to evidence the existence of an express trust. The court explained as follows:
On the facts before the court, the court is unable to conclude that the parties contemplated an express trust relationship when plaintiff consented to the reimbursement option. Despite appellants' use of trust language in their brief, the court agrees with the Bankruptcy Court that `[a]t most, these documents contractually obligate [York] to reimburse Continental for any overpayment that might result from a future Social Security award.' [FN1] Without some evidence indicating that the parties contemplated a trust relationship prior to York incurring the debt at issue, the court is reluctant to convert what appears to be a simple debtor-creditor relationship into a trust relationship which imposes fiduciary duties simply because appellants choose to categorize the relationship between the parties as such. . . . [A]ppellants are unable to satisfy the narrow legal definition of a `fiduciary' as that term is employed in § 523(a).
* * * * * *
FN1 To the extent that Continental and the Plan argue that York was under an obligation to hold specific funds  to wit, York's Social Security benefits, for Continental . . . the court is not convinced that a trust relationship existed sufficient to create fiduciary duties on the part of York.
The court noted that a substantial factor to be considered in determining the existence of a fiduciary relationship is the intent to create a trust relationship, rather than a contractual relationship. Id. at 762. A trust relationship sufficient to bestow fiduciary responsibility cannot be one which is merely implied from contract. Id. The mere failure to perform in accordance with a contract will not render a debt non-dischargeable on a fiduciary fraud theory under § 523(a)(4). Gore v. Kressner (In re Kressner), 206 B.R. 303, 312 (Bankr.S.D.N.Y.1997).
The Court is struck by the similarity of the York decision to the instant matter and persuaded by its analysis. Based upon the evidence, when considered in a light most favorable to the plan, the Court is satisfied that the documents before the Court in the present case are insufficient to create an express or technical trust as defined by federal bankruptcy law. Instead, the Court finds that the relationship between Eldridge and the plan was purely contractual.
In Chapman v. Klemick, 3 F.3d 1508 (11th Cir.1993), the Eleventh Circuit, determined that an insurer had a "contractual `claim' for reimbursement of . . . medical expenses it had paid on behalf" of the insured pursuant to a subrogation agreement executed by the insured. As in our case, the insurer required the insured to execute a subrogation agreement prior to paying the insured's medical expenses related to an automobile accident. The subrogation agreement provided that the insurer would be reimbursed should the insured recover any compensation for his injuries from the tort-feasor.
The issue before the Eleventh Circuit was whether the attorney for the insured was a *194 fiduciary of the insurer where the attorney released the settlement funds to the insured and informed the insurer that he would not advise his client to voluntarily turn over the funds. The district court held that the subrogation agreement rendered the settlement proceeds "trust fund assets" over which the attorney had exercised control, and, therefore, the attorney was a fiduciary of the trust fund. The Eleventh Circuit reversed the district court finding that the settlement funds did not constitute trust fund assets and that the attorney could not be a fiduciary of the plan.
In the present case, the Court also believes that the plan has a contractual claim for reimbursement of the $ 38,139.47 in medical expenses it paid on behalf of Eldridge by virtue of the subrogation agreement and plan documents. The Court is not persuaded, however, that these documents created a trust relationship sufficient to create fiduciary duties on the part of Eldridge as required by § 523(a)(4).
The plan focuses upon section 7.4(b) of the rules and regulations which requires plan participants to hold any money recovered from the tort-feasor in "trust" for the plan upon request in writing by the plan. However, the mere inclusion of the term "trust" in a contract is generally insufficient, in and of itself, to create a trust and transform the relationship between the parties from that of a debtor and creditor to that of a trustee and beneficiary. Davis, 293 U.S. at 334, 55 S.Ct. at 154 (stating that an "obligation is not turned into one arising from a trust because the parties to one of the documents has chosen to speak of it as a trust"); Wilmington Trust Co. v. Martin, 35 B.R. 982 (Bankr. E.D.Pa.1984); Great Am. Ins. Co. v. Storms (In re Storms), 28 B.R. 761 (Bankr.E.D.N.C. 1983); Argonaut Ins. Co. v. Morris (In re Morris), 37 B.R. 682 (Bankr.D.Or.1983).
The plan also argues that the subrogation agreement supports the existence of a fiduciary relationship. As previously stated, the district court in the York case explained that the intent of the parties is a substantial factor to be considered in determining the existence of a fiduciary relationship. It is clear from the correspondence between counsel for Eldridge and counsel for the plan that the plan was aware that Eldridge never intended to act as a fiduciary for the plan.
Instead, the Court finds that Eldridge and the plan were merely parties to a contract. Once Eldridge failed to reimburse the plan from the settlement proceeds for the medical expenses paid on his behalf, their relationship was merely transformed into a debtor-creditor relationship.
A separate order will be entered consistent with this opinion.
NOTES
[1] This Memorandum Opinion constitutes findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52, as made applicable to adversary proceedings in bankruptcy pursuant to Federal Rule of Bankruptcy Procedure 7052.