**CONTINENTAL CASUALTY COMPANY, Appellant,**

v.

**Leslie C. HUNT, Appellee.**

**No. 79410.**

Supreme Court of Oklahoma.

March 5, 1996.

Steven Daniels, Haven Tobias, Oklahoma City, for Appellant.

Kim Savage, National Senior Citizens Law Center, Los Angeles, California, John G. Fears, Norman, Gary A. Taylor, Stan L. Foster, Legal Aid of Western Oklahoma, Inc., Oklahoma City, for Appellee.

1. Leslie C. Hunt, the named appellee, died on November 27, 1994. Without objection, the Court substituted Sonja Ruth Hunt, executrix of

ALMA WILSON, Chief Justice:

■ The issue is whether the appellant, Continental Casualty Company, violated 42 U.S.C. § 407(a) by seeking a judgment for an alleged overpayment of disability insurance after the appellee, Leslie Hunt, was awarded back benefits from social security based upon disability. We find that the appellant's actions violated the federal statute.

### I. SUMMARY OF FACTS AND PROCEDURAL HISTORY

In 1963 appellee [1] acquired a disability-insurance policy. The policy was designed to provide disabled employees with a percentage of their pre-disability income. Hunt was not required to apply for social security benefits as a condition to receiving disability benefits under the policy. On January 1, 1978, the insurance company changed the terms of the policy by "Amended Rider No. 22." The rider provided:

"BENEFITS PAYABLE WILL BE REDUCED BY ANY AMOUNTS PAID OR PAYABLE UNDER THE DISABILITY OR RETIREMENT PROVISIONS OF THE SOCIAL SECURITY ACT, (EXCLUDING ANY PAYMENTS FOR ELIGIBLE DEPENDENTS), ANY WORKERS' COMPENSATION OR ANY OCCUPATIONAL ACT OR LAW, AND ANY OTHER DISABILITY RETIREMENT OR OTHER INCOME BENEFITS PROVIDED BY AND THROUGH THE EMPLOYER."

The rider did not require that an insured seek social security benefits as a condition to receiving disability from the insurance policy.

Approximately nineteen (19) years after he acquired the policy, Hunt became totally disabled due to severe hypertensive heart disease. On October 12, 1982, Hunt applied for disability benefits under the policy. Hunt asserts that disability insurance payments were his sole income to provide for himself and his family. The insurance payments were $801.69 per month. Hunt also applied for social security disability benefits within

the Estate of Leslie C. Hunt, as appellee in this appeal.

the year, which were denied on June 30, 1983.

Hunt received a letter dated March 13, 1987, from the insurance company, which reads:

"On several occasions we have requested that you file for your Social Security Disability benefits and send us copies of any documents, letters or forms that you may have or receive from them. The basis for these requests are the policy provisions which state that our benefits will be reduced by any amount paid or payable to you by the Social Security Administration. If we do not receive this information indicating an active pursuit of those benefits, it is necessary for us to reduce our benefits by an estimated amount of what your Social Security benefits should be. In the event we are not kept informed, we have no choice other than to make a determination of what the estimated amount of your Social Security benefit would be and deduct that amount from our payment.

"Please send us evidence that you have filed for your Social Security and that you are following up on a timely basis. Without that information in your file, we will estimate what your Social Security benefit should be and deduct that from our future payments.

"In the event it is necessary for us to make this estimation, we will estimate it from the date you should have been entitled to receive Social Security and deduct it from that date. This should be approximately six months from the first date of your disability. Our records show that your disability began in June of 1982. This means that approximately December of 1982 you should have been eligible to receive Social Security Disability benefits. Our estimate will be deducted from that date and we will request a refund of overpaid benefits resulting from the payment of full benefits while awaiting the Social Security award."

Hunt contends that he felt threatened and harassed by this letter. The insurance company asserts that the letter was not intended to be harassing, and the letter speaks for itself. Hunt's affidavit, attached to his motion for summary judgment, contends that out of fear of losing all income, he again sought social security disability benefits. The Social Security Administration again denied Hunt's claim on September 9, 1988.

The insurance company, wrote Hunt another letter dated October 12, 1988, which Hunt contends was harassing, abusive, and coercive. The insurance company wrote the letter approximately one month after receiving notice that Hunt's second attempt to receive social security disability had been denied. The letter states:

"The top portion of Form 1 is to advise us the manner in which you wish us to calculate your benefits at the sixth month of disability. If you wish to receive your full benefit while Social Security Disability benefits are being pursued, then check #1. Number 2 should be checked only if you wish us to reduce your benefit by the estimated Social Security Disability benefit. You are also to complete the bottom portion of Form #1 so that the Social Security Administration has your authorization to send CNA [Continental Insurance Company] a copy of the Award or Disallowance Notice.

"If you request us to advance full benefits while you go through the Social Security application and appeal process it is very possible that an overpayment will occur. It is important that you notify us immediately upon the receipt of the payment. Any monies you receive from Social Security should be set aside until we notify you of the amount of the overpayment. When we have notified you of the full amount of the overpayment, full reimbursement of the same should be made within 3 weeks.

"We also ask that you complete and return Form #2, the Integration Acknowledgement,[2] thereby agreeing to reimburse CNA [Continental Insurance Company] in the event of an overpayment."

---

**2.** "An integrated plan provides variable benefits dependent upon the amount of benefits the insured receives under other programs." *Poisson*

*v. Allstate Life Ins. Co.,* 640 F.Supp. 147, n. 1 (D.Me.1986)

In his affidavit, Hunt contended that he was coerced into agreeing to reimbursement because he could not work and had no way to support himself. He signed Form # 2, which reads:

"I also acknowledge the advantage of having the [insurance] company advance my regular indemnity until such time as I receive any of the benefits described above. I further realize that when I receive any of these benefits an overpayment will occur on my claim. I agree, in consideration of this advance, to reimburse the [insurance] company to the extent of the amount of such other benefits paid under the periods for which indemnity is paid under my coverage.

"I understand, and agree, that reimbursement for indemnity advance will be made in one (1) lump-sum upon receipt of such other benefits as described."

Hunt filed a third claim with the Social Security Administration, made with the assistance of the insurance company's consultant. In a letter dated June 18, 1990, the Social Security Administration awarded disability benefits retroactive to July of 1983. Hunt then received over $60,000.00 in a lump-sum payment of retroactive social security benefits.

The insurance company then calculated that it had paid Hunt $121,773.96 under its disability insurance policy. If Hunt had been receiving the disability benefits from social security, the insurance company would have paid Hunt $67,341.00. By letter on July 12, 1990, the insurance company asked Hunt to reimburse it the difference of $54,432.00, and the insurance company added: "All future benefits are suspended until such time as a complete recovery has been made."

Hunt did not pay the insurance company the claimed overpayment. Continental Insurance Company ceased making payments to Hunt effective July 1, 1990. Under the terms of the insurance policy, a disabled employee is to receive disability insurance payments until he reaches the age of 65. The insurance company figured that Hunt would reach the age of 65 before it had withheld enough money from monthly insurance payments for it to recoup the alleged overpayment of $54,432.00 that the insurance company argued Hunt owed it. It contends that Hunt owes $15,950.88.

On February 14, 1991, the insurance company filed this lawsuit against Hunt for a money judgment on the claimed overpayment of $15,950.88 allegedly due it when Hunt received the $60,000.00 lump-sum payment of social security benefits. Hunt answered by claiming that the basis of the insurance company's claim, his signing Form # 2, was an unlawful assignment of the lump-sum payment of social security benefits. He cited *First National Bank & Trust Company of Ada v. Arles*, 816 P.2d 537 (Okla.1991), and 42 U.S.C. § 407 of the Social Security Act, which absolutely prohibit "any legal process to reach all social security benefits." Both parties moved for summary judgment, and the trial court held that the insurance company's Form # 2 was an "invalid, unlawful assignment of social security Benefits and in violation of 42 U.S.C. § 407." It granted Hunt summary judgment. The insurance company appealed and the Court of Appeals reversed and granted the insurance company summary judgment. This Court has previously granted certiorari.

## II. RECOUPMENT OF BENEFITS

The insurance company argues that its reimbursement agreement is enforceable, and that the trial court erred in finding the agreement violative of 42 U.S.C. § 407. The insurance company initially notes in its argument that its right to set-off against the monthly disability payments it had been paying was not contested by Hunt. Then in supporting its proposition that its reimbursement agreement is enforceable, the insurance company cites cases where the insurance companies involved were allowed to recoup previous payments by withholding monthly benefits otherwise due.

The insurance company cites *Stuart v. Metropolitan Life Ins. Co.*, 664 F.Supp. 619 (D.Me.1987), *aff'd* 849 F.2d 1534 (1st Cir. 1988), *cert. denied* 488 U.S. 968, 109 S.Ct. 496, 102 L.Ed.2d 533 (1988), where the beneficiaries sued their insurer to challenge the recoupment of benefits by the defendant in-

surance company in an amount equal to retroactive lump-sum social security payments received by each plaintiff. The insurance company was not suing for a judgment against the lump-sum payment. The trial court held that the actions of the insurance company was not a "transfer" within the meaning of the Social Security Act prohibiting transfer or assignment of social security benefits. *Stuart* is not on point. The insurance company was not the party suing.

The insurance company next cites as support *Poisson v. Allstate Life Ins. Co.*, 640 F.Supp. 147 (D.Me.1986), where, as in *Stuart*, the beneficiary of the disability benefits was suing the insurance company. When the beneficiary received a lump-sum payment from social security, the life insurance company informed her that if she did not reimburse them for overpaying on her insurance benefits, it would reduce future benefit payments under the policy. The insurance policy had provided for variable benefits dependent upon the amount of benefits the insured would receive from other programs. The beneficiary chose to pay the amount instead of having her benefits reduced, and then she sued arguing that the actions of the insurance company violated 42 U.S.C. § 407. The court in *Poisson* cited *Hurd v. Illinois Bell Telephone Co.*, 136 F.Supp. 125 (N.D.Ill. 1955), *aff'd* 234 F.2d 942 (7th Cir.1956), *cert. denied*, 352 U.S. 918, 77 S.Ct. 216, 1 L.Ed.2d 124 (1956), which in turn cited congressional hearings concerning the effect of offset on social security benefits, noting the existence of the practice. Congress did not amend § 407. The court accepted the recommendation of the magistrate granting the insurance company's motion for partial judgment on the pleadings, and dismissed Poisson's complaint that the attempts of the insurance company to recoup disability benefits paid violated 42 U.S.C. § 407. Yet again, nothing is said concerning an insurance company's suit for a judgment on the overpayment. *Poisson* is not on point.

The insurance company next cites *Lessard v. Metropolitan Life Ins. Co.*, 568 A.2d 491 (Me.1989) to support its position. Like *Stuart* and *Poisson*, the beneficiaries under a group disability policy sued the insurer. Af-

ter social security had awarded a retroactive benefit, if the insured did not or could not reimburse the overpayment of benefits by the insurer, the insurer would withhold current plan benefits owed to the disabled insured. While the Supreme Judicial Court of Maine held that the recoupment by the insurer from monthly benefit payments did not amount to an illegal assignment in violation of the Social Security Act, it found the group insurance contract to be ambiguous, and the court construed the contract in favor of the plaintiffs, that at the time the benefits were paid by the insurer, they were due. Therefore, recoupment was improper. Once again, the case does not involve an insurer seeking a judgment against an insured.

Finally, the insurance company cites *Madden v. ITT Long Term Disability Plan*, 914 F.2d 1279 (9th Cir.1990), as support for its position that the insurance company is entitled to a lump sum repayment from Hunt. In referring to *Madden*, the insurance company argues that the Madden's insurer was seeking to recover a lump sum repayment from the plaintiff. The case does not support such a statement. Although the court holds that the insurer is entitled to the retroactive social security benefits Madden received for the period he also received insurance benefits, the facts do not reveal any judgment against Madden. No counterclaim by the insurer is mentioned. The case reveals that insurer's motion for summary judgment was granted, but there is no record that the trial court awarded a money judgment to the insurer. The support the Ninth Circuit Court of Appeals cites for upholding the recovery of retroactive social security awards is *Stuart*, where no money judgment against the insured was awarded by that court. The *Madden* court in its citation of *Stuart* observes that "courts have upheld the recovery of retroactive social security awards by ERISA plans where such plans provide for the reduction of benefits by such awards, even when the Plan does not specifically provide for such retroactive reimbursement." *Madden*, 914 F.2d at 1287. So the only authority cited in *Madden* merely permitted reduction of benefits to recover on retroac-

tive social security awards. *Madden* is not on point.[3]

Although the cases cited by the insurance company provide support for recoupment through withholding benefits payable under the policy, the cases provide no support for a money judgment in favor of the insurance company. As noted earlier, the self-help remedy by the insurance company of withholding benefits from the insured is not contested by Hunt.

### III. MONEY JUDGMENT

■ The insurance company maintains that this lawsuit is merely a breach of contract action, and that nothing prohibits a money judgment against Hunt based upon the alleged breach of the integration agreement signed by Hunt. Hunt answers that the integration agreement was unenforceable because of 42 U.S.C. § 407(a). Hunt argues that the insurance company seeks a judgment based on an agreement which is a violation of federal law.

Hunt first cites *Philpott v. Essex County Welfare Board,* 409 U.S. 413, 93 S.Ct. 590, 34 L.Ed.2d 608 (1973) as controlling. In *Philpott* one of the petitioners, Wilkes, applied to the Essex County Welfare Board, one of New Jersey's welfare agencies, for financial assistance because he was permanently and totally disabled. New Jersey law required that he execute an agreement to reimburse the county welfare board for all the payments he received. The agreement had the force of a judgment under New Jersey law. The purpose of these statutes was to obtain reimbursement out of subsequently discovered or acquired real and personal property of the recipient. Wilkes received the benefits. The agency advised Wilkes to apply for social security disability benefits.

When Wilkes was awarded retroactive disability benefits, and received a lump-sum check, it was deposited into Philpott's ac-

count as trustee for Wilkes. The agency sued to reach the bank account under the agreement to reimburse, but the trial court ruled that the respondent was barred by 42 U.S.C. § 407 from recovering any amount from the account. The Appellate Division affirmed, but New Jersey's Supreme Court reversed. The Supreme Court of the United States then granted a petition for a writ of certiorari.

The *Philpott* court held that § 407 "imposes a broad bar against the use of any legal process to reach all social security benefits." *Philpott,* 409 U.S. at 417, 93 S.Ct. at 592. The court continued that the bar was broad enough to include all claimants. That barred New Jersey from reaching the federal disability payments to Wilkes. The court reasoned that the language was all-inclusive:

> " '(N)one of the moneys paid or payable ... under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process....' The moneys paid as retroactive benefits were 'moneys paid ... under this subchapter'; and the suit brought was an attempt to subject the money to 'levy, attachment ... or other legal process.' "

*Philpott,* 409 U.S. at 415–416, 93 S.Ct. at 592.

This Court has cited and discussed the implications of the *Philpott* decision in *First Nat. Bank and Trust Co. of Ada v. Arles,* 816 P.2d 537 (Okla.1991). The *Arles* case concluded that the essential inquiry was whether the funds from which repayment is sought were social security benefits. Whether or not the source of repayment is set out in the agreement to repay is irrelevant. *Arles,* 816 P.2d at 540. The case held that judicial proceedings in the district court could not be used to force a judgment debtor to pay money to a plaintiff creditor where the debtor's sole source of income was social security and disability benefits. *Arles,* 816 P.2d at 538. The case also held that the "use of the courts

---

**3.** Likewise, the additional cases cited, but not discussed in the insurance company's brief, allow disability benefits to be reduced pursuant to policy language, but no case provides for a judgment against the insured. Those cases are *Spray v. UNUM Life Ins. Co. of America,* 749 F.Supp. 800 (W.D.Mich.1989); *Gray v. Travelers Indemni-*

ty Co. of Rhode Island, 725 F.Supp. 495 (M.D.Fla.1989); *Barklage v. Metropolitan Life Ins. Co.,* 614 F.Supp. 51 (D.C.Mo.1985); *Weiss v. CNA,* 468 F.Supp. 1291 (W.D.Pa.1979); and *Porter v. Continental Casualty Co.,* 156 Ariz. 488, 753 P.2d 178 (App.1988).

to enforce an agreement between two parties is 'legal process.'" *Arles,* 816 P.2d at 541.

In applying *Philpott* and *Arles* to the case at bar, we first observe that the insurance company has employed legal process because it is using the district court in an attempt to enforce the document signed by Hunt purporting to agree to reimburse the insurance company from any funds received from social security benefits. Hunt claimed that until he started to receive social security benefits, his sole income was from the disability benefits provided by the insurance company. The insurance company does not controvert this fact in its brief. Therefore, it appears that *Philpott* and *Arles* control. The insurance company is prohibited from using the district court in an attempt to enforce the purported integration agreement.

The Court of Appeals agreed with the insurance company that the issue before the trial court was not whether it was entitled to execution against funds protected by § 407, but whether the insurance company had a right to a judgment on its contract. The Court of Appeals reasoned that *Arles* prohibits the use of judicial proceedings to reach social security benefits, not the threshold step of obtaining a judgment. The court concluded that whether the insurance company would ultimately execute on a judgment in its favor and receive payment from sources it is entitled to reach is not at issue.

We cannot agree. In *King v. Schafer,* 940 F.2d 1182 (8th Cir.1991), the United States Court of Appeals for the Eighth Circuit held that the Missouri Department of Mental Health could not threaten legal action against representative payees of social security benefits. These payees were relatives of patients involuntarily committed to the care and custody of the Director of Mental Health after being found guilty of crimes by reason of "mental disease or defect." These patients had been determined to be disabled by the Social Security Administration due to mental illness, and each received a monthly social security benefit. The Department of Mental Health had sent the representative payees letters advising them that if they ever refused to pay charges for the costs of the patient's care and treatment, pursuant to

state law, the Department would bring legal action against them and seize their state income tax refunds to satisfy the debt. The Department had not even filed a lawsuit. Nevertheless, the Court of Appeals for the Eighth Circuit held that what a state cannot do, it cannot threaten to do. *King,* 940 F.2d at 1185, citing *Moore v. Colautti,* 483 F.Supp. 357, 368 (E.D.Pa.1979), *aff'd,* 633 F.2d 210 (3d Cir.1980).

According to *King,* a threat to sue pursuant to a state statute providing for collection against social security benefits for care of patients is illegal under federal law, even where the collection is to be from tax refunds. Should the insurance company in the case at bar stand in a better position than the state of Missouri? We think not.

The insurance company was obligated to pay disability benefits to Hunt at the time he became disabled. Hunt was not obligated by the contract to apply for social security benefits. When he did, and finally received a lump sum benefit, those funds were protected by federal law from legal process. That includes threats of lawsuits, filing of lawsuits, and judgments. We cannot agree with the insurance company that it was merely trying to enforce a simple contract. Although the insurance company has a right, pursuant to the cases discussed above, to offset its disability benefits being paid to a beneficiary by funds received from social security benefits, the insurance company was prohibited by federal law from threatening a lawsuit, filing a lawsuit, or receiving a judgment in an attempt to collect against the lump sum received by Hunt. That is clearly what the insurance company was attempting to do, in spite of its assertions to the contrary.

The insurance company received premiums for nineteen years for disability insurance on Hunt. The contract obligated the insurance company to pay when Hunt became disabled. Because there was the possibility that Hunt was also entitled to social security disability benefits, the insurance company claimed the right to deduct what the insurance company itself would estimate those benefits to be immediately, even though it knew that social security benefits are always delayed. So the beneficiary of a disability policy has not only

lost his ability to earn a paycheck, receiving in return a portion of the income he formerly received, his insurance company informs him that it will additionally reduce that amount by what it estimates he should receive from social security, and he can live on that until he eventually receives his social security benefit, if he is entitled to such a benefit at all. Then the insurance company presents the insured a document allowing him to continue to receive his full benefit, to which he thought he was entitled, if he agrees to repay the insurance company in a lump sum when he receives his lump sum benefit from social security. It is unfair to characterize such an arrangement as an "agreement." We decline to do so.

CERTIORARI PREVIOUSLY GRANTED. OPINION OF THE COURT OF APPEALS VACATED. JUDGMENT OF THE TRIAL COURT AFFIRMED.

KAUGER, V.C.J., and HODGES, OPALA and SUMMERS, JJ., concur.

LAVENDER, SIMMS, HARGRAVE and WATT, JJ., dissent.