Dear Senator Cain,
¶ 0 This office has received your letter requesting an official Attorney General Opinion in which you ask, in effect, the following questions:
 1. Do the Oklahoma State and Education Employees Group Insurance Board's ("OSEEGIB") administrative rules, codified at Title 360 of the Oklahoma Administrative Code, concerning OSEEGIB's disability plan ("Disability Plan"), which limit benefits if an insured receives Social Security payments, exceed the legislature's grant of statutory authority to OSEEGIB?
 2. Does the OSEEGIB rule, which requires repayment to the Disability Plan for overpayments received by the insured during the time of disability, exceed the legislature's grant of statutory authority to OSEEGIB? If not, is this rule lawful in light of the holding of the Oklahoma Supreme Court in Continental Casualty Co. v. Hunt, 913 P.2d 292 (Okla. 1996)?
 3. Under its current rule, may OSEEGIB terminate disability benefits of an insured who fails to cooperate in repayment to the Disability Plan upon overpayment to the insured?
 I. Background
¶ 1 Your inquiries essentially challenge OSEEGIB's right to: (1) reduce the amount of payments to an insured by the amount of Social Security payments received by that insured; (2) require repayment to the Disability Plan in the amount of any lump sum reimbursement from Social Security; and (3) terminate an insured's benefits for failure to cooperate in repayment. Before your questions are addressed, some background is appropriate.
¶ 2 In 1985, OSEEGIB was given the authority to establish a plan of disability income benefits for eligible State employees in the State Employees Disability Program Act ("Act"), 74 O.S.2001, §§ 1331-1335[74-1331-1335]. In 1989, participation by county employees was authorized upon resolution of the board of county commissioners. Id. § 1335. The intent of the Legislature concerning administration of the duties of OSEEGIB is:
 (1) The State and Education Employees Group Insurance Board shall discharge their duties with respect to the State and Education Employees Group Insurance Act, the State Employees Flexible Benefits Act and the State Employees Disability Program Act solely in the interest of said Acts and:
(a) for the exclusive purpose of:
 (i) providing benefits to the participants and their dependents, and
 (ii) defraying reasonable expenses of administering the State and Education Employees Group Insurance Act, the State Employees Flexible Benefits Act and the State Employees Disability Program Act;
 (b) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims[.]
Id. § 1305.1[1] (emphasis added).
¶ 3 The Legislature authorized OSEEGIB to promulgate "such rules as are necessary for adoption and administration of the Disability Insurance Program, including but not limited tobenefit eligibility requirements, methods for computing benefitamounts, benefits amounts, and verification of medical and health status of employees applying for or receiving benefits."Id. § 1332(A) (emphasis added). In 1985, pursuant to the statutory authority, OSEEGIB adopted Administrative Rules to administer the Disability Plan.
 II. Legality Of Rules Adopted By OSEEGIB
¶ 4 A. Rules concerning reduction in disability benefits dueto receipt of Social Security
As set forth above, OSEEGIB is authorized to establish rules"including but not limited to benefit eligibility requirements,methods for computing benefit amounts, benefits amounts, andverification of medical and health status of employees applyingfor or receiving benefits." Id. (emphasis added). It is statutorily mandated to carry out its duties, which include establishing rules, "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudentperson acting in a like capacity and familiar with such matterswould use in the conduct of an enterprise of a like character andwith like aims[.]" Id. § 1305.1(1)(b) (emphasis added).
¶ 5 It is axiomatic that an agency making rules be "fully authorized so to do either by statutory provision or implication." W.S. Dickey Clay Mfg. Co. v. Ferguson Inv. Co.,388 P.2d 300, 301 (syllabus ¶ 1) (Okla. 1963). Agency "authority to make rules for their various procedures . . . does not include the authority to make rules which in effect extend their powers beyond those granted [by the] statute." Boydston v.State, 277 P.2d 138, 142 (Okla. 1954). "Rules promulgated pursuant to the provisions of the Administrative Procedures Act are presumed to be valid until declared otherwise by a district court of this state or the Supreme Court." 75 O.S. 2001, §306[75-306] (C).
¶ 6 You state that OSEEGIB "has created a rule which limits the payment of disability insurance to those who qualify for social security, while it does not do so for those who do not qualify." Letter from Bernest H. Cain, Jr., State Senator of Oklahoma to Oklahoma Attorney General W.A. Drew Edmondson (Sept. 16, 2002) (on file with the Attorney General's office). You question whether such rule exceeds the legislature's grant of statutory authority to OSEEGIB. The rules relevant to your question, whether disability benefits under the Disability Plan may be reduced by the amount of Social Security Payment, are:
360:15-1-11. Duration and amounts of benefits
 (a) Determination of monthly disability benefits.
To determine monthly disability benefits:
 (1) Multiply the employee's base compensation by 60%, subject to short-term and long-term benefit maximums as established by the Board.
(2) Deduct any benefit offsets.
 (3) Monthly benefit will be (1) minus (2), subject to any minimum long-term disability benefit as established by the Board
. . . .
 (c) Cooperation required. Continued benefits shall be contingent upon cooperation and participation in the rehabilitation program herein.
 (1) In order to remain eligible for long-term benefits, the insured must make application for Social Security benefits by the seventh month of disability and continue pursuing Social Security benefits until the appeals process is exhausted. Refusal to appeal denial of Social Security benefits through the entire appeals process is grounds for termination of benefits. Exceptions may be granted by the Board in certain cases where application for Social Security benefits is not practical due to the type of disability.
 (2) If, after twenty-four [24] months of disability, the Social Security Administration has not deemed the insured eligible for Social Security disability benefits, the insured will no longer be eligible for benefits from this plan.
 (3) Exceptions to (c), (1), and (2), above may be granted by the Board on a case-by-case basis.
. . . .
360:15-1-12. Benefit offsets
 (a) Offset by benefits received from other sources.
The disability benefit due from this plan shall be offset by benefits received from other sources. These sources are:
 (1) Any sick leave benefits for which the employee is eligible.
(2) Social Security benefits as follows:
 (A) Any amount of primary disability benefits provided under the United States Social Security Act for which the employee is eligible because of this disability; and
 (B) Any amount of primary and/or family retirement benefits provided under the United States Social Security Act which the employee receives.
 (C) The following benefits under the Social Security Act are not to be considered offsets under this program:
 (i) Social Security benefits effective prior to the established date of disability, unless awarded as a result of the same disability;
 (ii) Social Security widow's/widower's benefits not connected to the claimant's disability; and
 (iii) benefits awarded under the Supplemental Security Income Program.
 (3) Any benefits received under the provisions of State of Oklahoma or county retirement systems, except those benefits which began prior to onset of disability.
 (4) Benefits related to the Disability provided by another group plan. Such benefit becomes due as a result of the disability and not by a voluntary election to receive the benefit. This does not include:
(A) plans funded entirely by employee contribution;
 (B) plans where payment of these benefits reduce the benefit the claimant would be due at a normal retirement age; or
 (C) payments for conditions established one [1] year or more, prior to the established date of this disability claim. This does not include a profit-sharing plan, a 401K, a thrift plan, an Individual Retirement Account, stock ownership plan, tax sheltered annuity or any benefits from a non-qualified deferred compensation plan.
 (5) Benefits related to this disability that are provided under any state's Worker's or Workman's Compensation Law, any occupational disease law, or any other similar act or law.
 (6) Any salary, wages, holiday pay, commissions or similar earnings the employee receives from any gainful employment, or annual leave payment. Longevity pay is not considered an offset.
(7) Subrogation (loss of earnings for employee only).
 (8) 50% of any earnings while partially disabled or during rehabilitative employment prior to final release.
(9) Any overpayment of previous disability payments.
(10)Any unemployment compensation benefits.
Id.
¶ 7 Benefit amounts are calculated by the following methodology: An amount is first calculated by multiplying an employee's base compensation by 60%, subject to certain short- and long-term maximums. OAC 360:15-1-11(a)(1). Receipt of income from numerous other sources, including Social Security, detailed in OAC 360:15-1-12(a), is subtracted from the calculation; the benefit is determined. For example, two employees have a base compensation of $3000 per month each. That amount, multiplied by 60% equals $1800.[2] Employee One receives $1000 from one of the many sources identified in OAC 360:15-1-12, including but not limited to Social Security payments, another employer group plan or payments under Workers' Compensation. His benefit amount from the Disability Plan is thus $1800-$1000=$800. Employee One would, however, receive a total of $1800 per month in benefits from two sources. Employee Two has the same base compensation and thus has an initial calculation of $1800. However, he does not receive any income from an enumerated benefit offset. Thus, he receives $1800 from the Disability Plan.
¶ 8 The question is whether this $1800 initial calculation may,by rule, be reduced by offsets for some employees when other employees, because they are not subject to offsets, receive $1800 from the Disability Plan.[3] The answer is that such reduction is within the rule-making authority of OSEEGIB. Determination of the methods for computing benefits amounts may be devised by OSEEGIB to determine the benefit amount it must pay. OSEEGIB's statutes explicitly authorize it to establish a methodology and an amount in its rule-making process. 74 O.S.2001, § 1332[74-1332] (A).
That this methodology and resulting amount are within the statutory mandate which governs OSEEGIB is further amplified by the language of the statute that OSEEGIB act as a "prudentperson . . . in a like capacity and familiar with such matterswould use in the conduct of an enterprise of a like character andwith like aims." 74 O.S. 2001, § 1305.1[74-1305.1] (1)(b) (emphasis added).[4] OAC 360:15-1-11 and 15-1-12 do not exceed the grant of statutory authority by the legislature to OSEEGIB.
B. Rule Governing Benefit Overpayment.
¶ 9 You next ask whether the OSEEGIB rule requiring repayment to the Disability Plan for any overpayment received by the insured during the time of disability exceeds the legislature's grant of statutory authority to OSEEGIB. If not, you ask whether this rule is lawful in light of the Oklahoma Supreme Court's holding in Continental Casualty Co. v. Hunt, 913 P.2d 292
(Okla. 1996).
1. Legality of the rule requiring repayment of overpayment.
The relevant rule states:
 (d) Payment of any overpayment or underpayment.
Benefits will be estimated if they have not yet been awarded, have not been denied or have been denied and the denial is being appealed. Any overpayment or underpayment that results from estimating these benefits will be repaid by the responsible party after the actual benefit is determined.
OAC 360:15-1-12.
¶ 10 An example of overpayment to an insured occurs when OSEEGIB begins to award a monthly benefit but a benefit offset, for example, Social Security or Workers' Compensation payments, has not yet been awarded. The employee is due a monthly amount of $1800. Because his/her other benefit, if any, has not yet been determined, OSEEGIB estimates the amount the employee will receive from the other source and deducts it from the $1800 amount. If the estimated amount is $1000, OSEEGIB would pay a monthly benefit of $800. If, on determination of the benefit offset ten months later, the employee receives an award from the other source, averaging $1200 per month, he/she has been overpaid $1200 ($200 per month × 10 months) and, under OAC360:15-1-12(d), would be required to pay the amount of the overpayment to the Disability Plan.
¶ 11 Likewise, if the employee were granted a benefit of only $500 per month from the second source, he would have been underpaid $5000 ($500 per month × 10 months) and OSEEGIB would, under the same rule, be required to pay the employee that underpayment. Such repayment may occur in a lump sum payment by the insured, by application of the Disability Plan monthly benefit to the overpayment, or by a new contractual agreement between the insured and OSEEGIB for installment payments.[5] An OSEEGIB rule also seems to provide for what is known as "recoupment":[6]
 (c) Lump sum payments. If any benefits from the sources mentioned in (a) of this section [the benefit offsets] are paid in a lump sum, the Board will prorate the benefits on a monthly basis, either over the period for which the benefit is established or over the actuarially expected life time of the employee, if no time period is established.
OAC 360:15-1-12.
¶ 12 As with the question whether the rules concerning reduction of the monthly disability payment by benefit offsets are authorized, we must determine whether the rules concerning overpayment are authorized by statute. Agencies have "authority to make rules for their various procedures, but this does not include the authority to make rules which in effect extend their powers beyond those granted and fixed by statute." Boydston v.State, 277 P.2d 138, 142 (Okla. 1954). As noted above, OSEEGIB has statutory authority to make rules necessary for the adoption and administration of the Disability Plan including but notlimited to, inter alia, the methods of computing benefit amounts and benefits amounts (74 O.S. 2001, § 1332[74-1332] (A)), and isdirected to act with skill, prudence and diligence as one "woulduse in the conduct of an enterprise of a like character and withlike aims." 74 O.S. 2001, § 1305.1[74-1305.1] (1)(b) (emphasis added).
¶ 13 The concept of repayment of disability benefits by the insured due to receipt of Social Security benefits by the insured is often provided by contract in the private disability insurance industry[7] and supported by judicial authority. Poissonv. Allstate Life Ins. Co., 640 F. Supp. 147, 148-49 (D. Me. 1986). In Poisson the insured challenged the right of the disability insurance company to withhold disability benefits as repayment for excess amounts received under her policy occasioned by her receipt of Social Security benefits. The court dismissed the insured's complaint, finding that the insurance company's action was permissible. Id. at 149; see also Hunt,913 P.2d at 297, n. 3 (noting a number of cases in which recoupment had been allowed to an insurer because of overpayment in the form of Social Security benefits to the insured).
¶ 14 In light of the statutory language giving OSEEGIB broad powers to administer the Disability Plan, including the determination of methods of calculating benefits and benefit amounts themselves and the use of a pay back of overpayment in the private disability insurance industry, OSEEGIB was within its authority to promulgate OAC 360:15-1-12 requiring an insured to repay overpayments he or she receives.[8]
2. Legality of requiring a pay back of overpayment under theSocial Security Act.
¶ 15 The Social Security Act provides:
 (a) The right of any person to any future payment under this subchapter shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law.
42 U.S.C. § 407 (1998).
¶ 16 In Continental Casualty Co. v. Hunt, 913 P.2d 292
(Okla. 1996), the Oklahoma Supreme Court addressed whether this provision of the Social Security Act barred an insurer from seeking a judgment against an insured predicated on an agreement by the insured to pay back an overpayment she received. The overpayment resulted from receipt by the insured of both disability plan and Social Security payments. Id. at 298. The court found the pay back agreement invalid and ruled the insurer could not seek a judgment against the insured. Id. at 299. The court, citing various judicial authorities,[9] very clearly distinguished its holding that the insurer could not seek a money judgment against the insured, from a permissible scenario in which an insurer sought pay back by a method such as reducing the amount of monthly payments until the overpayment had been satisfied. Id. at 297-99. Hunt does not bar OSEEGIB from promulgating and enforcing its rule, set forth at OAC360:15-1-12(d), requiring repayment by an insured; Hunt simply mandates that OSEEGIB not invoke judicial process or the threat of judicial process to gain payment in contravention of the Social Security Act, 42 U.S.C. § 407.[10] Id.
C. The Legality of Termination of Disability Plan Payments underthe Act
¶ 17 You last ask whether, under its current rule, OSEEGIB may terminate disability benefits of an insured who fails to cooperate in repayment to the Disability Plan upon overpayment to him or her. The rule provides:
360:15-1-18 Suspension or termination of benefits
 Disability benefits may be suspended or terminated.
For failure to:
 (1) Fully cooperate with or implement the rehabilitation plan;
 (2) Submit to examination by a physician selected by the Board;
(3) Supply recertification by a regular physician;
(4) Cooperate in the repayment of overpayments; or
 (5) Otherwise comply with the requirements of this plan.
Id. (emphasis added).
¶ 18 The Act establishing the Disability Plan does not set forth the circumstances in which disability benefits may be terminated. OSEEGIB has elected, in its promulgated rules, to set forth four specific circumstances that may lead to termination. The Act provides for an appeal of a termination decision to a grievance panel, subject to the Administrative Procedures Act.74 O.S. 2001, § 1332[74-1332] (D). OSEEGIB rules set out the hearing procedures before this grievance panel. OAC 360:1-5-1-8. Neither the Act nor the rules provide for pre-termination notice or hearing.
¶ 19 A threshold question arises concerning the rule: whether the process for termination provided in the Act and rules meets minimum standards of due process required by the United States Constitution. U.S. Const. amend. XIV, § 1. We turn to a well-used two-prong analysis. First, did the insured lose a protected life, liberty or property interest and second, did the insured receive the minimum measure of procedural protection warranted under the circumstances? Mallette v. Arlington County Employees'Supplemental Ret. Sys. II, 91 F.3d 630, 634 (4th Cir. 1996). The interest must be determined by an independent source, such as a state statute, for a claim of entitlement to exist. Id. at 635. This claim of entitlement must be more than a mere expectation; rather, there must exist some statute which acts to constrain the decision-makers' discretion. Id. (citation omitted). InMallette, the reviewing court discussed the creation of a property interest in a retirement disability benefit in detail, citing numerous cases in which a statutory subsistence benefit had created a property interest. Id. at 635-37. That (1) the plan was a benefit for past labor services, (2) there were statutory provisions for qualification, and (3) a hearing for the employee was mandated in the statute, were important factors cited by the court in determining the existence of a statutory entitlement, which created a property interest. Id.
¶ 20 To find the existence of a property interest for a disabled state employee, one need look no further than the mandatory language of the Act which requires that:
 A. The State and Education Employees Group Insurance Board shall establish a Disability Insurance Program for state employees. The program shall
consist of a long-term disability plan and a short-term disability plan. Participation in the program shall be limited to state employees who have been state employees for a period of not less than one (1) month and who are eligible for enrollment in the Health Insurance Plan administered by [OSEEGIB] . . .
 B. The Disability Insurance Program shall be funded from appropriations made by the Legislature. Employees shall not be required to make contributions to participate in the program.
 C. Employee disability insurance coverage shall begin on March 1, 1986.
¶ 21 74 O.S. 2001, § 1332[74-1332] (emphasis added). Additionally, an appeal process is provided to an aggrieved employee who wishes to challenge a benefit termination. Id. § 1332(D). Under the jurisprudence of numerous cases, the Act which creates the Disability Plan creates an entitlement to eligible employees; thus it creates a constitutionally protected property interest.Mathews v. Eldridge, 424 U.S. 319, 332 (1976); Mallette,91 F.3d at 636 (citing various benefit rights, including disability rights, which create a property interest).
¶ 22 Having determined that an insured has a property interest in the continuation of disability benefits, the next question is what process is due the insured prior to termination.
 A recipient of a government benefit is generally entitled to some form of notice and an opportunity to be heard before being deprived of a property or liberty interest. Vanelli v. Reynolds School Dist. No. 7, 667 F.2d 773, 778 (9th Cir. 1982); see Logan v. Zimmerman Brush Co., 455 U.S. 422, 436 . . . (1982) ("absent `the necessity of quick action by the State or the impracticality of providing any predeprivation process,' a post-deprivation hearing here would be constitutionally inadequate." (quoting Parratt v. Taylor, 451 U.S. 527, 539 . . . (1981))[.]
Knudson v. City of Ellensburg, 832 F.2d 1142, 1148 (9th Cir. 1987). This opportunity need not be an evidentiary hearing if other pre- and post-deprivation administrative process is adequate under the facts. See Mathews, 424 U.S. at 332-49.
¶ 23 The articulated basis for termination, lack of cooperation by the insured in the repayment of overpayments, does not set forth a particularized standard that gives the insured sufficient substantive notice of the circumstance which could lead to termination. Additionally, requiring cooperation in the form of a "voluntary" contract between the insured and the insurer for repayment could, under particular facts, be invalid as coercive as in Hunt. Finally, the termination and appeal rules do not provide for any pre-termination notice or hearing of any measure. The total absence of any notice or opportunity for pre-termination hearing makes the rules constitutionally infirm under controlling judicial authority.[11] Termination of an insured's benefits under the current rule set out at OAC360:15-1-19 is impermissible.[12]
 ¶ 24 It is, therefore, the official Opinion of the AttorneyGeneral that:
 1. The Oklahoma State and Education Employees Group Insurance Board's ("OSEEGIB") administrative rules, codified at OAC 360:15-1-11, 12 of the Oklahoma Administrative Code, concerning OSEEGIB's disability plan ("Disability Plan"), which limit benefits if an insured receives Social Security payments, do not exceed the Legislature's grant of statutory authority to OSEEGIB, under the State Employees Disability Program Act, 74 O.S. 2001, §§ 1331-1335.
 2. The OSEEGIB rule, OAC 360:15-1-12(d), which requires repayment to the Disability Plan for overpayments received by the insured during the time of disability, does not exceed the legislature's grant of statutory authority to OSEEGIB under 74 O.S. 2001, §§ 1331[74-1331] -1335. Also, this rule is lawful under Continental Casualty Co. v. Hunt, 913 P.2d 292, 298 (Okla. 1996).
 3. The current rule, OAC 360:15-1-18, which allows OSEEGIB to terminate disability benefits of an insured who fails to cooperate in repayment to the Disability Plan, does not meet the requirements of minimum due process, including notice and hearing, under the Fourteenth Amendment to the United States Constitution. See, e.g., Knudson v. City of Ellensburg, 832 F.2d 1142, 1148 (9th Cir. 1987).
W.A. DREW EDMONDSON Attorney General of Oklahoma GRETCHEN GROVER HARRIS Assistant Attorney General
[1] See 2002 Okla. Sess. Laws ch. 196, § 2 (amending 74 O.S.2001, § 1305.1[74-1305.1]). The modifications are not germane to the discussion here.
[2] Monthly payments are subject to certain short-term and long-term minimum and maximum amounts, none of which are necessary to this example.
[3] If the OSEEGIB rule were impermissible, Employee One would receive $2800 and Employee Two $1800.
[4] The concept of benefits reduction by offset is an accepted disability insurance concept, known as integration. See Burton T. Beam Jr., The Am. Coll., Group Benefits: Basic Concepts and Alternatives 164-66 (6th ed. 1995). This concept both serves an actuarial purpose and encourages disabled employees to return to work, if possible.
[5] See Memorandum from Gary Goff, Attorney/Assistant Administrator of OSEEGIB, attached to a letter from Bill W. Crain, Administrator of OSEEGIB, to Assistant Attorney General of Oklahoma Gretchen Harris 4 (Oct. 17, 2002) (on file with the Attorney General's office).
[6] Recoupment simply means the action of recouping. Recoup means "to keep back rightfully a part of so as to diminish a sum due: deduct; specif: to abate or reduce." Webster's Third New International Dictionary 1898 (3d ed. 1993).
[7] Letter from Joseph W. Hrbek, Group Vice President, Member Service Life, to Gary Goff, Attorney/Assistant Administrator of OSEEGIB 1 (Oct. 1, 2002) (on file with the Attorney General's Office). (Member Service Life is the administrator of the Disability Plan.)
[8] Three different methods of pay back were described in a memorandum attached to a letter from Bill W. Crain, Administrator of OSEEGIB. See Memorandum from Gary Goff, Attorney/Assistant Administrator of OSEEGIB 3. Whether all or any of these specific methods is lawful under the Social Security Act is not within the scope of this Opinion.
[9] See, e.g., Philpott v. Essex County Welfare Bd.,409 U.S. 413, 417 (1973); First Nat'l Bank Trust Co. v. Arles,816 P.2d 537, 541 (Okla. 1991).
[10] Whether a particular method of pay back, recoupment, lump sum payment or voluntary contract violates the bar against assignment or use of process is a question of fact beyond the scope of an Attorney General's Opinion. 74 O.S. 2001, §18[74-18] (b)(A)(5).
[11] If OSEEGIB provided constitutionally appropriate due process, its termination rules would meet the requirements as articulated in Sections II A and B. Rules establishing pre-termination notice and hearing would likely, under the judicial authority cited above, meet due process requirements. Because termination is a process logically required in some circumstances in a disability plan, and because OSEEGIB has rule-making authority and the mandate to carry out the Disability Plan in a prudent manner, it has the authority under the test ofBoydston to promulgate rules concerning termination.
[12] The provision of the Administrative Procedures Act which states that a rule is presumptively valid is not to be "construed to impair the power and duty of the Attorney General to review such rules and regulations and issue advisory opinions thereon."75 O.S. 2001, § 306[75-306] (C).